UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| QUINTEN Q. JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV419-337 |
| ) | |
| JOHN WILCHER, STEVENSON, ) | |
| and CORRECT HEALTH, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECCOMENDATION

Proceeding *pro se* and *in forma pauperis* (IFP), plaintiff Quinten Q. Jenkins has filed a 42 U.S.C. § 1983 complaint for damages against John Wilcher, CNA Stevenson, and Correct Health, alleging he received inadequate medical care while an inmate at the Chatham County Detention Center ("CCDC"). Doc. 1 at 3-5. The Court granted Jenkins' request to pursue his case *in forma pauperis*. Doc. 3. He has returned the necessary forms. *See* docs. 5 & 6. The Court now screens his Complaint under 28 U.S.C. § 1915A, which requires the immediate dismissal of any *pro se* complaint that fails to state at least one actionable claim against a governmental entity or official.

1

## BACKGROUND

While housed at the CCDC, Jenkins alleges that he requested hydrocortisone cream for his eczema, but received "cyclotrisone"[1] cream instead. Doc. 1 at 3. CNA Stevenson told Jenkins to try the alternative, since it "has the same thing [as] hydrocortisone." *Id.* After a day of using the alternative, Jenkins did not like the build-up of the cream on his skin. *Id.* The next day, his skin "[broke] out." *Id.*

Jenkins told CNA Dampach about the situation. Doc. 1 at 3. Dampach "wrote a note," and told Jenkins that he would put in an order for the correct cream. *Id.* Over the next couple of days, Jenkins' hydrocortisone cream did not arrive at pill call, and the areas where Jenkins applied the "cyclotrisone" "[began] to get worse." *Id.* at 3-4. A day later, Stevenson gave him back "the exact cream CNA Dampach took from [him]." *Id.* at 4. Jenkins alleges that Stevenson did not read the note that Dampach left. *Id.* Jenkins kept the "cyclotrisone" until Dampach came back. *Id.* Subsequently, the rashes "got worse over [his] body." *Id.* Jenkins finally received the hydrocortisone cream from

---

[1] The Court is unable to identify any medication called "cyclotrisone." Since the exact identity of the compound is irrelevant to the below analysis, the Court has simply retained Jenkins' identification of the medication.

2

Dampach the day after the prison received the cream, which was ten days after his initial request to Stevenson. *See id.* at 3-4.

Jenkins also alleges that he suffered headaches and mouth sores because Stevenson gave him an inhaler he used for several days before discovering it was intended for a different inmate with the same surname of "Jenkins."[2] Doc. 1 at 4. When Jenkins later asked Dampach for "[his] inhaler," Dampach responded that "[Jenkins] didn't have one." *Id.* During that conversation, Dampach and Jenkins realized that Jenkins had been using another inmate's inhaler. *Id.* Jenkins was put on sick call and treated for his headaches and mouth sores. *Id.*

Jenkins alleges that his "pressure has been bothering [him]." Doc. 1 at 4-5. After Jenkins experienced a headache, Stevenson checked his vitals without documenting the examination. *Id.* at 5. Jenkins "put a grievance in about that," but the grievance was rejected. *Id.* His headaches and mouth itch persist. *Id.*

---

[2] Jenkins alleges that he received the inhaler when he went to pill call to see if his mental health medicine had arrived. Doc. 1 at 4. Although it had not arrived, he "was given an inhaler." *Id.* Jenkins' complaint does not explain whether he has always used an inhaler and received the wrong one, if he had a new prescription for an inhaler and received the wrong one, or if he does not regularly use an inhaler, and began using an inhaler after receiving one.

## ANALYSIS

Liberally construed, Jenkins' Complaint alleges violations of the Eighth Amendment against Stevenson based on inadequate medical care, Correct Health based on failure to train medical staff, and Sheriff Wilcher based on supervisory liability.

### A. *Claims Against Stevenson for Inadequate Medical Care*

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that the Eighth Amendment proscription against cruel and unusual punishment prevents prison personnel from subjecting an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Pleading such a violation requires that the prisoner (1) satisfy an "objective component" by alleging that the prisoner had a serious medical need; (2) satisfy a "subjective component" by alleging that the defendants were deliberately indifferent to that need; and (3) allege that the injury was caused by the defendants' wrongful conduct. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Under the objective component, "a serious medical need is . . . one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize

4

the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal citations and quotations omitted). The need must be so grave that if it is left unattended, it poses a "substantial risk of serious harm." *Morrison v. City of Atlanta*, 614 F. App'x 445, 449 (11th Cir. 2015).

Under the subjective component, "deliberate indifference" requires that a defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence." *Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citing *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008)). A plaintiff's mere disagreement with the medical care provided does not, however, amount to a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) ("a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment."). Moreover, "malpractice" allegations do not suffice. *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999); *Jackson v. Franks*, 2012 WL 6626020, at *1 n.4 (S.D. Ga. Dec. 19, 2012).

### *1. Eczema Creams*

The Court construes Jenkins' complaint as alleging three instances of inadequate medical care for his eczema: (1) Stevenson initially gave Jenkins "cyclotrisone" instead of hydrocortisone, (2) several days later, Stevenson gave Jenkins "cyclotrisone" again even though he had previously complained to another CNA about that alternative treatment, and (3) overall, Jenkins waited ten days from his initial conversation with Stevenson until he actually received hydrocortisone.  *See* doc. 1 at 3-4. Regardless of whether Jenkins' eczema is a "serious medical need," he has affirmatively pled that prison officials were not deliberately indifferent to his need in all three circumstances, so his claim fails.

First, Jenkins preferred hydrocortisone to treat his eczema, but Stevenson, who Jenkins alleges is a certified nursing assistant, indicated that he could use "cyclotrisone."  *See* doc. 1 at 3.  Jenkins did not like the build-up of the "cyclotrisone" on his skin, and it caused him to break out and develop rashes.  *Id.*  Bad medical advice, even assuming that the medical advice *was* bad, does not a constitutional violation make.  *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (a prisoner cannot establish a violation simply because he "may have desired different

6

modes of treatment" than that which was provided to him); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (mere accidental inadequacy, negligence in diagnosis or treatment, and even medical malpractice do not give rise to § 1983 liability); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient to establish a constitutional violation). At most, Jenkins may have a malpractice claim if he received the wrong eczema cream from Stevenson. Because that is not actionable under 42 U.S.C. § 1983, *see Estelle*, 429 U.S. at 106, this claim should be **DISMISSED**.

Second, Jenkins alleges that several days after his initial meeting with Stevenson, she gave him "cyclotrisone" again even though Dampach had noted Jenkins' preference for hydrocortisone, and even though the "cyclotrisone" caused skin irritation. Doc. 1 at 3-4. Stevenson's alleged failure to read Dampach's note does not imply, even charitably, that she recognized some risk to Jenkins and chose to disregard it. *Harper*, 592 F.3d at 1234. At most, any failure to become aware of Jenkins' prior complaints was negligent, which does not establish "deliberate indifference" under the Eighth Amendment. *Id.* Additionally, Stevenson did not violate Jenkins' Eighth Amendment rights by giving him

"cyclotrisone" again at this meeting, even though it previously irritated his skin. Stevenson identified Jenkins' need for eczema treatment and decided to provide treatment in the form of "cyclotrisone." Doc. 1 at 3-4. Jenkins may have disagreed with Stevenson's medical judgment, but such disagreement does not support an Eighth Amendment claim. *Thigpen*, 941 F.2d at 1505. Since Jenkins' allegations contradict any contention that Stevenson was deliberately indifferent to Jenkins' condition when she gave him more "cyclotrisone," this claim should be **DISMISSED**.

Third, Jenkins alleges that he did not receive hydrocortisone until ten days after he initially expressed his preference for that medication to Stevenson. Doc. 1 at 3-4. Jenkins fails to establish deliberate indifference by alleging a ten-day delay between his initial request for hydrocortisone and his actual receipt of the cream. *Id.* Although courts have held that a delay in treatment could rise to the level of deliberate indifference, *Farrow*, 320 F.3d at 1247 (citing *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990)); *Harris v. Coweta Cty.*, 21 F.3d 388, 393-94 (11th Cir. 1994), Jenkins did not experience a "delay" in treatment. Rather, he received a treatment with which he disagreed for ten days.

*See* doc. 1 at 3-4. This is not actionable under § 1983, *Thigpen*, 941 F.2d at 1505, so this claim should be **DISMISSED**.

### 2. *Inhaler*

Jenkins also complains that Stevenson mistakenly gave him another inmate's inhaler, which he then used. Doc. 1 at 4. Regardless of whether Jenkins has a serious medical need for an inhaler, he has affirmatively pled that prison officials were not deliberately indifferent to his need under the subjective component of the Eighth Amendment. Courts have held that although prison officials mistakenly giving inmates incorrect medication may give rise to a malpractice claim, it does not constitute "deliberate indifference." *See Daniels v. Beasley*, 241 F. App'x 219, 220 (5th Cir. 2007) (dismissing plaintiff's claim for failure to establish that a defendant giving him the incorrect medication involved more than negligence); *Johnson v. Price*, 2020 WL 2858491, at *7 (S.D. Ga. Apr. 30, 2020) (plaintiff fails to state an Eighth Amendment medical mistreatment claim by alleging that a nurse gave him the wrong medication out of "mere neglect"); *Chestnut v. S.C. Dep't of Corr.*, 2010 WL 1052213, at *3 (D.S.C. Feb. 12, 2010) (plaintiff did not allege that a prison nurse giving him the wrong medicine was more than "erroneous

9

and inadvertent," so his deliberate indifference claim failed). Construed favorably, Jenkins alleges that prison officials were negligent in giving him an inhaler not intended for him, which is not deliberate indifference. *Taylor*, 221 F.3d at 1258; doc. 1 at 4 (In his demand for relief, Jenkins requests a medical evaluation "[t]o determine if there will be [recurring] problems as a result of the *neglegence* [sic] of the medical department of CCDC.") (emphasis added). Accordingly, this claim should be **DISMISSED**.

### 3. *Vitals Examination Without Documentation*

Jenkins further alleges that at an unspecified later time, Stevenson checked his vitals because he was experiencing a headache. Doc. 1 at 5. Jenkins alleges that he "got it checked by CNA Stevenson, but it was never documented. [Jenkins] put a grievance in about that . . . ." *Id.* To the extent that Jenkins alleges inadequate medical treatment for Stevenson's failure to document the examination, he fails to state a claim under the Eighth Amendment. Courts have held that a prison official's failure to maintain accurate medical records does not constitute deliberate indifference. *Holloman v. Nelson*, 817 F. Supp. 88, 90 (D. Kan. 1993) ("To the extent plaintiff claims he was denied adequate medical

care because defendants failed to maintain accurate records . . . plaintiff states at most a claim of negligence and he must seek relief in a tort action in state court."); *Robinson v. Bureau of Health Care Servs.*, 2021 WL 4306116, at *4 (M.D. Pa. Sept. 22, 2021) (Plaintiff's allegation that defendants failed to maintain his medical records accurately is not sufficient to establish deliberate indifference).

Additionally, Jenkins does not allege that Stevenson's failure to document the examination caused him an injury, which is an essential component of a claim under the Eighth Amendment. *Goebert*, 510 F.3d at 1326; *Epps v. Harper*, 2016 WL 6205297, at *5 (W.D. Pa. Oct. 24, 2016) (Plaintiff's Eighth Amendment claim for failure to maintain accurate records fails when he does not allege that the failure caused him an injury); *see Robinson*, 2021 WL 4306116, at *4 (same). Accordingly, this claim should be **DISMISSED**.

### *B. Claim Against Correct Health for Failure to Train*

Jenkins' claim against Correct Health is based on its failure to provide Chatham County Detention Center medical staff "with the proper training."[3] Doc. 1 at 4. He fails to allege facts sufficient to

---

[3] Only "person[s]" are subject to suit under § 1983. 42 U.S.C. § 1983. Municipalities,

establish a failure-to-train claim under § 1983.  Under § 1983, "a supervisor can be held liable for failing to train his or her employees 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact.'"  *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  To establish deliberate indifference in this context, a plaintiff must demonstrate that a supervisor had "actual or constructive notice that a particular omission in their training program causes his or her employees to violate citizens' constitutional rights," and, despite that knowledge, "the supervisor chose to retain that training program."  *Hardy v. Georgia Dep't of Corr.*, 2019 WL 4670758, at *9 (S.D. Ga. Sept. 24, 2019) (quoting *Keith*, 749 F.3d at 1052) (internal quotations omitted).  Additionally, a plaintiff must show that supervisors'

---

including county governments, and private entities acting in their place are "person[s]" under the statute.  *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).  Here, Jenkins' claim against Correct Health is functionally treated as a suit against a municipality under § 1983.  *Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Buckner*, 116 F.3d at 452) ("'[w]hen a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state' and 'becomes the functional equivalent of the municipality' under section 1983."); *Maley v. Corizon Health, Inc.*, 2018 WL 1002635, at *8 (S.D. Ga. Feb. 21, 2018) (citing *Buckner*, 116 F.3d at 452) (a plaintiff can maintain a deliberate indifference claim against Chatham County Detention Center's private healthcare contractor, since it is functionally treated as a suit against a municipality).

failure to train actually "caused their employees to violate [the plaintiff's] constitutional rights." *Lewis v. Adams*, 2020 WL 1441434, at *4 (S.D. Ga. Mar. 12, 2020).

Jenkins' failure-to-train claim against Correct Health fails because, as discussed, he has not sufficiently alleged that any prison official actually violated his constitutional rights. *Lewis*, 2020 WL 1441434, at *4. Additionally, even if Stevenson had violated his Eighth Amendment rights through inadequate medical care, Jenkins has not alleged any facts indicating that Correct Health was deliberately indifferent to some deficiency in a training program for medical staff. *Keith*, 749 F.3d at 1053. Accordingly, this claim should be **DISMISSED**.

### C. *Claims Against Sheriff Wilcher*

Jenkins names Sheriff Wilcher as a defendant in this action, but does not allege any action taken (or not taken) by Wilcher, personally. *See* doc. 1 at 4 ("Sheriff John Wilcher should be held [accountable] for his medical staff."). Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). A plaintiff must, therefore, plead that each state-actor

13

defendant, through the individual's own actions, has violated the Constitution. *Rosa v. Fla. Dep't of Corr.*, 522 F. App'x 710, 714 (11th Cir. 2013). Because Jenkins has not pled any facts even suggesting that Wilcher personally participated in a constitutional violation, any claims against him should be **DISMISSED**.

## Conclusion

In summary, Jenkins' claims based on inadequate medical care should be **DISMISSED**.[4] Though a *pro se* prisoner normally should be given an opportunity to amend his complaint at least once, *see, e.g.*, *Johnson v. Boyd*, 568 F. App'x 719, 724 (11th Cir. 2014); *Duff v. Steub*, 378 F. App'x 868, 872 (11th Cir. 2010), "a district court need not allow amendment if the amended complaint would still be subject to dismissal." *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015). Jenkins'

---

[4] Even if the Court construed Jenkins' complaint to allege state law malpractice claims, supplemental jurisdiction over those claims would be inappropriate given the dismissal of Jenkins' federal § 1983 claims. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." If federal claims are dismissed prior to trial, courts are "strongly encourage[d] or even require[d]" to dismiss state law claims in the case. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)). The Court thus declines to exercise supplemental jurisdiction over Jenkins' state law malpractice claims, if any.

inadequate medical care and failure-to-train claims are dead on arrival, and do not appear amendable.[5]

This Report and Recommendation (R&R) is submitted to the district court judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

---

[5] Despite the lack of any apparent basis for viable amendment, plaintiff's opportunity to object to this Report and Recommendation within 14 days of service, *see infra*, affords him an opportunity to resuscitate his case. He may also submit an Amended Complaint during that period, if he believes it would cure the legal defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at *2 n.3 (S.D. Ga. Jan. 19, 2012) (citing *Smith v. Stanley*, 2011 WL 1114503 at *1 (W.D. Mich. Jan. 19, 2011)).

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED and RECOMMENDED,** this 22nd day of October, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA